et al., 2012, 1695, 2013, 1020. I see that appellants have broken down 15 minutes into four pieces. My ancient arithmetic is less than four minutes per, but please proceed. You are Mr. Vaughn. I'm Mr. Vaughn, Your Honors. I represent United States Steel. This is a very important case. Hot-rolled steel is the most widely made of all flat-rolled products. Japan and Brazil have very large hot-rolled industries. But let me get to the point. We understand the case. Isn't this a substantial evidence case? And wasn't there substantial evidence to support the revocation of the order with respect to Japanese and Brazilian imports? No, Your Honor. The substantial evidence standard requires that the determination be reasonable. And in this case, the Commission made basic fundamental errors of fact, which cannot allow the opinion to be sustained. First, the Commission assumed that rise in demand in Asia would reduce the incentive of Japanese mills to ship hot-rolled steel to this market. This was an extremely important fact in the case, an extremely important assumption by the Commission, because one of the key issues in the case was whether or not Japan would use its excess capacity to ship hot-rolled steel to the United States. In fact, the record showed that despite rising demand in Asia, that Japan's excess capacity was expected to increase. In other words, they would not be serving the rising demand in Asia. That demand would be served by other producers. Japanese mills would have more excess capacity. And therefore, they would have a stronger incentive to increase their... The substantial evidence was that they were looking to Asian markets. But, Your Honor, the facts show that they could not serve any more of those Asian markets. They simply could not ship more to there. In fact, their excess capacity was going to grow. And given that their excess capacity was going to grow, the Commission was required to say, what are they now going to do with this excess capacity? They couldn't just simply assume, which they did, that it would go over to Asia, because the facts go the other way. Once again, we are reviewing on a substantial evidence basis, not of an issue. That's correct. And we're not asking that you... What we have here is a situation where there is a fundamental mistake, which is a factual flaw in the decision. They write in the decision, we're not worried about your unused capacity because we think you're going to be able to ship more to Asia. There is record evidence that they never discussed, they never addressed, never respond to it, showing that they're not going to be able to do that, that there's going to be more capacity in Japan. The Asian market is not going to take up that capacity. There was extensive argument on this by the parties below. They just didn't address it. So under the substantial evidence, now it's not right to have to come to the court and say, for you guys to affirm a determination, this is wrong. It's based on a factual error. I mean, now the case needs to go back to the Commission and they have to decide, okay, given that you made this assumption and that assumption is not supported by the facts, what do you do? How do you feel about the decision now? And that's only one of the errors. They also... A key finding for their analysis was that they would be able to increase sales to the customers with whom they had long-term relationships. Again, there's a lot of briefing on what was going to happen to the future of those relationships. They didn't address any of that briefing. They simply assumed that because there had been increasing sales to these customers in the past, there would be increasing sales to these customers in the future. Again, the record shows that's not the case. Their excess capacity is expected to grow. So again, that's just another mistake that the Commission made in its analysis and it completely undermines their whole reasoning with respect to that issue. Another issue relates to the situation of vulnerability. We have a situation here where the domestic industry faces two big problems. There's poor demand and they're not making very much money. They're making about 1 or 2 percent a year in the last year of the period of review. The Commission says, well, we don't think you're vulnerable because we think demand is going to improve. Again, the relevant question, though, is how much is demand going to improve? In other words, do they have evidence in the record showing that demand will improve by a sufficient amount that it will actually make a significant difference in the vulnerability or lack of vulnerability of the domestic industry? Mr. Vaughan, you wanted to save a couple of minutes. The lights don't show it, but you're into your last two minutes. Okay. Well, I... I'm setting up the stick. He's not saving. Oh, he's not saving? All right. Continue. Okay. Continue. So, again, this is... So we've got... We've basically just got these three situations where the Commission has simply made a factual mistake. They thought... They assumed since demand in Asia was rising, Japanese producers would benefit from that demand. The facts show that's not the case. All right. So what is it... Where in the record do you say that the evidence shows that the  demand... You can see this in their brief. If you look at their brief on page 31, they concede, Commission counsel concedes, they say U.S. Steel contends that the Commission's likely volume analysis was flawed because it failed to consider that somebody projected that the Japanese available capacity... Japanese industry's available capacity would grow from 2010 to 2012. I mean, that's the fact right there. I mean, if their available capacity is growing, then they're not able to take advantage of growing Asian demand in order to work off the excess capacity that they already have. It's just a fundamental fact in the case. They never addressed it. They never respond to it. They never said anything about it. They just simply assumed it away. And it's just a mistake. And it's a critical mistake because their entire analysis of the I think I am running into my rebuttal time, so I will... Well, I just... You indicated you have no rebuttal time. No, I think... He's arguing there's 15 minutes total. Mr. Vaughn is going for six. She will argue for four. He will rebut for two. And she will rebut for three. And my first six just expired. Yeah. First six. We'll hear from Ms. Thorson now. Good morning. May it please the court. Just so I'm clear, you don't object to the Japan finding? You're only addressing Brazil? We object to the Japan finding, and we briefed that. But I'll be addressing Japan pricing, Brazil, and vulnerability here during this oral argument. Again, may it please the court, the basis for Nucor's appeal is simple. In revoking the anti-dumping duty orders on hot-rolled steel from Brazil and Japan, the International Trade Commission simply failed to acknowledge, much less discuss, certain critical material record evidence and arguments that detracted from its conclusions, raising the question of whether the agency in fact considered that information at all or important aspects of the problem before it. The agency's approach to likely Japanese pricing is a case in point. The agency relied on what its counsel conceded are limited data with respect to Japanese prices in the U.S. market during the review period, ignoring record evidence showing that Japanese producers are selling or were selling in other export markets at prices far lower than the prevailing U.S. market prices. Agency counsel has argued that third-country export pricing is simply irrelevant to the 1675AA3 of the Tariff Act, but that provision simply says that in sunset reviews, the commission is to consider the extent to which subject producers' likely future pricing in the United States will undermine price prices for the domestic-like product. There are any number of types of evidence that might be relevant to that analysis, and nothing in the statute indicating that foreign producers' prices in third-country markets are irrelevant per se to the inquiry. Particularly here, where there was a paucity of data on the record with respect to what Japanese producers were actually charging in the United States during the review period because they just went shipping to the United States with high anti-dumping duties in place, the third-country export data was relevant. You say it's relevant, but even if you accept the fact that it's relevant, the question is how much relevance could it possibly have if that's not the determination that we're attempting to make? I mean, how can you translate what they charge in third countries to what they would likely charge in the United States? It at least provides you with some input as to what their floor pricing is. How low are they willing to go in export markets? How high do they go in export markets? Do their prices change in relation to volume? Do they not? There's some relevance here, and if the commission decided it wasn't relevant, it needed to at least explain why it wasn't relevant. It couldn't just maintain a perfect silence on the issue. Silence is not explanation. There's similar issues with respect to Japanese volumes. If a piece of evidence is merely a data point and may not carry much weight, do they have to cite to every single piece of evidence that might be relevant even if they don't feel that it meaningfully changes the analysis? The amount of relevance of a particular data point or piece of information is going to depend on what other evidence you have in the record and what evidence they had in the record here with respect to Japanese pricing in the U.S. market was very little data indeed. Given the paucity of the data with respect to what Japanese producers were actually charging in the U.S. market during the review period, they had to broaden that analysis. They couldn't just assume, well, I guess Japan won't really sell at prices below the U.S. market. They had evidence before them that was apparently relevant. If they didn't think it was relevant, they needed to at least acknowledge and mention this is why we're not going to consider this evidence or this is why we don't think it's persuasive here. Ignoring it leaves this Court and leaves the parties unable to understand what the Commission's analysis really was and to understand whether it was in fact based on the entire record or not. The Commission's approach to Japanese volume, Mr. Vaughn has addressed, but I'd like to also mention that in considering likely Japanese volumes, the Commission treated all of Asia as a single unified market destination for Japanese product, but treated all Latin American countries as single individual markets. There's a desperate treatment here. Why is Asia one giant market, whereas Latin America is a bunch of different tiny markets? The desperate treatment is not alluded to by the Commission. They don't acknowledge that they're treating these types of countries differently and they don't even, so there's no explanation there, of course. I'm running into my rebuttal time, so I will retire. Fine, we will save your rebuttal time and welcome you back in due course. Thank you. In the meantime, we'll hear from Mr. St. Charles now, I believe. May it please the Court. It's interesting. I'm going to start by responding to a couple of the points that the other counsel raised. It's interesting that counsel for USTO points to page 31 of our brief to argue that the capacity in Japan was going to increase. That page explains very clearly that while the production was going to increase and the capacity was going to increase in Japan, so was consumption in the Asian markets on which the Japanese producers were focused. And that demand was going to increase substantially beyond the level at which capacity and production were going to increase in Japan. Ms. Thorson says we should be looking at these third country prices and as the Court's own question indicated, even if they were potentially relevant, it's the Commission's job to weigh the evidence and determine what weight to put on it. The Commission gave extensive explanations not only for these factors, she's saying, which are left to guess. There's a lot of times when the Commission doesn't explain every piece of information on the record, but in this case it explained our focus on pricing is the US market. There was an explanation. And we therefore do not view these average unit values as particularly pertinent. Let me go back to your first point. Your friend on the other side was arguing, he was saying that in fact there is evidence in the record that showed that somehow Japan could not ship to these other Asian countries. I don't recall seeing that. Do you agree that there's such evidence in the record? Yeah, I'm not sure what he's talking about. All right, well what about the argument, and perhaps I misunderstood his point and maybe his argument is more that if Japan already has excess capacity, what makes us think that they won't, as they expand to satisfy the Asian market, they won't continue to have excess capacity. They will continue to have excess capacity. What the Commission found was they looked at other markets besides Asia where the Japanese could have used their excess capacity to increase production to ship to non-Asian markets, the U.S. being a non-Asian market. And the goal being, are they likely to export to the United States? The Commission looked at third country markets and said there hadn't been any steep increases in volumes that were substantial. The increases had been steady over the period, which is primitive of what they're likely to do in the U.S. in the event of a provocation because the U.S. is a third country, is a non-Asian market as well. That was the Commission's finding, that excess capacity hadn't been used for that purpose of non-Asian markets for significant increase and it wouldn't be used in the future. Ms. Thorsen's point that the Commission in making that finding looked at countries on an individual basis and she says did not aggregate Latin American countries. Neither did they in any of their submissions to the Commission. We have no idea on the record what that analysis they're alleging would show. Excuse me. If one of your colleagues wants to give you a glass of water we wouldn't mind. Thank you. Then you might like it. Yeah, I'm sorry, my voice... In any event, the questionnaire response data gives aggregate numbers for the amount of exports by the Japanese producers that were going to non-Asian markets and it's confidential but if you view that trend you see it's consistent with the Commission's conclusion that there had not been steep increases in the exports to those markets. So what evidence did the Commission have to conclude that the pricing would not there would not likely be a substantial price impact? I mean, the argument from NUCOR is that it really had virtually no evidence and so it should have at least considered the pricing outside the United States that the Japanese employed. What's your response to that? The Commission found that there had been no history of pervasive underselling. As the statute directs it looked at what happened in the original investigation and it found that in most instances in the comparisons of the U.S. price to the Japanese imports there had been overselling rather than underselling. Those instances of underselling occurred during the Asian financial crisis during which there was no the demand had plummeted in Asia and therefore Japan was exporting to the U.S. where demand happened at the time to be increasing and in order to increase those sales of commodity products they had undersold the domestic products. So in finding there was no history of pervasive underselling the Commission looks first at what happened in the original investigation. There wasn't substantial underselling in that time frame. In the current review, although it was under the discipline of an order in all 14 comparisons there was overselling rather than underselling. In the prior review it was 2 and 2 over and under but the Commission reasonably concluded that in the absence of pervasive underselling historically it was unlikely to occur if the revocation occurred. As the court below found all of the parties the appellant parties arguments pertain to matters in which they want to have evidence reweighed. At best their arguments show that there was an alternative approach that may have been adopted but that fact is legally irrelevant the fact that an alternative approach would have been possible. They also point to isolated elements of the Commission's analysis. The likely volume analysis was very complex the Commission found that the Japanese were focused on the Asian markets that their presence there had grown that demand was likely to grow in the future that they had long-term relationships with customers that they had not significantly increased exports to non-Asian markets in the past indicating that they weren't likely to ship to the United States in the event of revocation. They also found that although US prices were pretty high compared to other markets they weren't sufficiently high under the circumstances of the Asian focus to cause a shift of that focus. Now Mr. Vaughn says well these relationships the Commission should have looked into them further the Commission had before it the Japanese producers explanation of the relationships it's intuitive that having long-term relationships will put you in a more likely posture to make sales than would the absence of long-term relationships in the United States so it's sort of a red herring when they argued this goodwill in the form of long-term relationships would prove irrelevant to the future. On vulnerability the Commission acknowledged that there's a trend a relationship between demand trends and the industry's performance the industry's performance had been very good early in the period peaking in 2006 it declined somewhat in 7 and 8 it plummeted in 2009 as a result of the recession and it recovered somewhat to profitability in 2010 the Commission took full account of where the industry was how strong it was how weak it was and simply concluded that it wasn't vulnerable but its performance was lackluster but not so terrible in light of the demand conditions now they seek to have a label attached of vulnerability but they don't make clear how doing so would alter the Commission's analysis which fully reflected and took account of the industry's condition the label vulnerable would not guarantee an affirmative particularly where as here the Commission found for both Japan and Brazil that the likely volume of imports would not be significant upon revocation and its finding that the price effects would not be significant anything further Mr. St. Charles simply that in its meeting its requirement that it look at what happened in the original investigation the Commission did emphasize in the volume finding that the reason we had a steep increase in the volume from Japan in the original investigation was similarly related to the Asian financial crisis and that was not a condition that was likely to recur in the reasonably foreseeable future indeed the contrary was the case the demand in the Asian markets was steeply increasing and therefore we weren't going to have this push across the ocean thank you Mr. St. Charles Mr. Wood will have 3 minutes good morning I'm going to try to cover 2 issues very quickly I'd also like to note that I'm joined by Mr. Lewis representing the Brazilian respondents let me say at the outset that I agree with Mr. Vaughn that both the issues of Japanese exports to Asia and unused capacity were very significant issues below in fact these were extensively briefed and covered in the Commission's decision we should state at the outset that this is not a case in which the Commission forgot to address an issue of important materiality or somehow did not consider the relevant arguments they had extensive argumentation before then addressed that in the opinion Judge O'Malley let me turn first to your question as to where's the evidence in the record that the Japanese respondents could not increase their shipments to Asia our response to that would be quite to the contrary there was substantial evidence in the record showing that those shipments could increase in the future we've outlined in our brief the record of increasing long-term customer relationships in Asia the dynamic nature of those relationships which not only grew in number but added capacity over time we've pointed as did the Commission to the substantial increase in exports to the Asian markets over the period of review and the forecast of continued strong growth in those markets and as I understood the Commission found that the evidence showed that the increase in Asian demand was going to outstrip the increase in excess capacity I think it's fair to say that the Commission looked at the entirety of the record saw that there was this history of increasing shipments saw that demand was projected to remain strong that the Japanese producers had these relationships in place and had a strategy of continuing to grow those relationships and determined reasonably that they would be able to continue to do so Mr. Vaughn's approach is a very common but incorrect way of challenging these Commission's decisions he picks one piece of evidence out of the record a source that they prefer and say we can calculate an unused capacity amount from that source and the Commission should have treated that as the gospel truth and turned its entire decision around that and that was an option that was available to them it was just an option they didn't choose it was not the only piece of evidence on the record relating to capacity for example at all the Commission had questionnaire data from the Japanese producers that showed if one were to go back in the record and compare very different levels of unused capacity than the source that Mr. Vaughn prefers it had evidence that despite growth in other capacity in Asia for example the Japanese producers had been consistently successful in increasing their exports over the period and from that it was reasonable to project that they can continue to do so I don't believe I can make any further points in 10 seconds so unless the Court has further questions I will stop there Thank you Mr. Wood Mr. Vaughn has two minutes and Ms. Thorsten three I think the Court's indulgent Judge O'Malley I think you put your finger on the whole key to this appeal which is the issue of what was going to happen to the Japanese access capacity as what you have not heard these other guys tell you is that it was going to go down and the reason they didn't tell you it was going to go down is because the evidence in the record does not show that it was going to go down the evidence in the record shows that they were going to have more unused capacity in 2012 than they did in 2010 that's not just one sort of piece of evidence plucked out of the record it's a fundamental critical fact in the record that at a minimum had to be addressed by the Commission once you recognize that their unused capacity is going up all of the justifications given by the ITC fall apart demand is growing in Asia yes, but your unused capacity is going up they have these long term relationships yes, but your unused capacity is going up your incentive to ship to the United States is growing in the near future, it's not shrinking and they just never address this fact and so the entire analysis of the likely volume of Japanese imports rests on a presumption as you rightly said the assumption is that the excess capacity would be going down but there's compelling evidence in the record that that's not going to happen and they simply never address that evidence do you disagree with your friend on the other side who said that in fact there was also evidence other evidence with respect to how you should calculate that excess capacity to show that in fact it's not going to be as much as you predicted there was extensive back and forth between the parties in terms for example of what was going to happen with some of these long term relationships we put evidence on the record, they put evidence on the record the commission just didn't address any of that the commission just said well there's these long term relationships and therefore we assume that shipments to those people will increase to me if you have basic straight forward evidence showing that the available capacity was going to increase that's a critical fact that the commission should have addressed and they just didn't I think the court is indulgent thank you Mr. Vaughan, Ms. Thorson thank you, may it please the court just a few points in rebuttal to Mr. St. Charles first, Mr. St. Charles appears to fault Newport for not having analyzed Latin American markets on an aggregate basis, but it's the commission that raised this entire question by treating two different regions separately, or disparately without explanation Asia becomes one giant region not a collection of individual country markets whereas Latin America somehow each of these countries maintains its political identity for purposes of the commission's review whereas Asia becomes this giant blob that Japan just sends stuff to instead of a bunch of individual markets so why the disparate treatment is not addressed by the commission they don't even acknowledge that they're treating these two regions differently secondly, questionnaire data the very questionnaire data that Mr. St. Charles cites from the Japanese producers showed that they were expanding their sales to non-Asian markets at a greater clip than their sales to Asian markets over the period of review this further raises the question why are we looking only at Asian markets why is that the end all be all of the commission's analysis and then as to the pricing data Mr. St. Charles appears to concede that there was very limited pricing data with respect to Japan's actual import pricing into the United States during the review period, but he points to the original investigation data in which there was mixed Japanese underselling and overselling that underselling however was injurious and the commission had contemporaneous data data contemporaneous to the period of review about what Japan, what its prices were to export markets that it could have looked at it didn't look at it, or if it did look at it it didn't acknowledge it, so we don't actually know what the commission did with this data other than say, oh it's irrelevant the state of the record demanded a greater explanation, or at least acknowledgement of this data than the commission gave which puts us in a position where we have great difficulty in ascertaining what the commission's true reasoning was. Silence, as I said before is not an explanation as to how the agency viewed evidence that fundamentally undermined its conclusion so rather than asking this court to re-weigh the evidence Nucor is asking that this court remand in order to ensure that the agency in fact had a rational basis for its determinations Thank you Thank you, Ms. Thorson, we'll take the case under advisement